UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Bank of America, N.A., as Successor by Merger to BAC Home Loans Servicing, LP,<br><br>    Plaintiff<br><br>v.<br><br>Fidelity National Title Group, Inc., et al.,<br><br>    Defendants | Case No.: 2:21-cv-0523-JAD-VCF<br><br>**Order Remanding Case to State Court**<br><br>[ECF No. 7] |

Nevada's 2008 housing crash kindled thousands of quiet-title lawsuits between the homeowner associations that foreclosed on homes when the homeowner stopped paying assessments, the banks that held the first-trust deeds on those homes, and the investors who snapped those homes up at bargain-basement prices. Having consumed the state and federal courts for more than half a decade now, those cases have mostly burned out. But a phoenix has risen from their embers: the banks now sue the title insurers that issued policies when the mortgages were originated for failing to defend them in those quiet-title suits and cover their losses.

This removed action is one of those coverage suits. Though Bank of America filed it in Nevada state court against forum and non-forum defendants, three of the title-insurer defendants removed this case before any defendant, including themselves, had been served with process and despite a forum defendant whose existence should have precluded removal. The propriety of this practice—termed "snap removal"—is an issue that has divided the courts. The bank challenges this practice in its motion for remand. Because I find that the removal here was improper, I grant the bank's motion for remand.

**Discussion**

I.     **Legal standard**

28 U.S.C. § 1441(a) authorizes defendants to remove to federal court "any civil action brought in a [s]tate court of which the [U.S. District Courts] have original jurisdiction . . . ." But "[f]ederal courts are courts of limited jurisdiction."[1] So defendants seeking removal jurisdiction "always have the burden of establishing that removal is proper."[2] This is a heavy burden to carry because there is a "strong presumption against removal jurisdiction[,]" the removal statute is "strictly construe[d] against removal jurisdiction[,]" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."[3]

II.    **Analysis**

Fidelity National Title Insurance Company, Commonwealth Land Title Insurance Company, and Chicago Title Insurance Company removed this case on diversity-jurisdiction grounds.[4] Congress has created a limitation to diversity-based removal jurisdiction. 28 U.S.C. § 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This limitation is called the forum-defendant rule, which is a "procedural, or non-jurisdictional, rule."[5]

In an effort to skirt the forum-defendant rule, Fidelity, Commonwealth, and Chicago Title removed this case before any defendant had been served with process. The bank moves for

---

[1] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
[2] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).
[3] *Id.*
[4] ECF No. 1 at 2 (removal petition).
[5] *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

remand, arguing that the snap-removal practice violates the forum-defendant rule, which applies here because four of the named defendants, Fidelity National Title Agency of Nevada, Inc.; Chicago Title Agency of Nevada; Ticor Title of Nevada, Inc.; and Lawyers Title of Nevada, Inc. are Nevada citizens.[6] The removing defendants respond that removal before any defendant has been served to defeat the forum-defendant rule is a permissible practice and, regardless, the forum-defendant rule does not apply because the claims in this case have been fraudulently misjoined to defeat removal, plus there is also federal-question jurisdiction because Freddie Mac, not Bank of America, is the real party in interest.[7]

### A.  The snap removal was improper under 28 U.S.C. § 1441(b)(2).

The removing defendants argue that snap removal is a permissible practice and a valid means to avoid the forum-defendant rule. They point out that "every single" federal appellate jurist to consider the issue has concluded that the plain language of § 1441(b)(2) is unambiguous and permits snap removal[8] but acknowledge that the Ninth Circuit has not yet done so.[9] Recognizing that I—and all judges in this district (except for one) to have considered its removals in dozens of nearly identical suits—have repeatedly held that this practice is impermissible, the removing defendants urge me to reconsider and reverse my view.[10] The bank, on the other hand, contends that the interpretation that the removing defendants and their authorities offer cuts against the statute's language and purpose of preserving the plaintiff's

---

[6] ECF No. 7.

[7] ECF No. 19.

[8] *Id*. at 6 (citing, e.g., *Texas Brine Co., LLC v. Am. Arb. Ass'n*, 955 F.3d 482 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest., Inc.*, 902 F.3d 147 (3d Cir. 2018)).

[9] *Id*. at 7.

[10] *Id*. at 2.

3

choice of a state forum when at least one defendant is a citizen of that state.[11]  The bank adds that each of the authorities that the removing defendants cite is materially distinguishable and that nearly all judges in this district have overwhelmingly rebuffed the title insurers' snap-removal tactics.[12]

When interpreting federal statutes, "the starting point in discerning congressional intent is the existing statutory text . . . ."[13]  "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[14]  Courts are required to "presume that the legislature says in a statute what it means and means in a statute what it says there."[15]

The appellate courts that have determined that § 1141(b)(2)'s "plain language allows snap removal" before any defendant has been served did so by focusing on the "properly joined and served" phrase in the statute.[16]  But not all courts agree with that interpretation.  The "[d]istrict courts are split as to whether snap removals are appropriate," and "[t]here is ongoing debate on whether there is a trend in favor or against" the practice.[17]  Heavily cited in the

---

[11] ECF No. 7 at 11–15.

[12] *Id*. at 2 & n.1; ECF No. 21 at 2, 5–7.

[13] *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

[14] *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (internal quotation marks omitted).

[15] *Bedroc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (cleaned up).

[16] *Texas Brine Co.*, 955 F.3d at 486; *accord Gibbons*, 919 F.3d at 705 ("The statute plainly provides that an action may not be removed to federal court on the basis of diversity of citizenship once a home-state defendant has been "*properly* joined and *served*."); *Encompass Ins. Co.*, 902 F.3d at 152 (finding that the plain language of § 1441(b)(2) unambiguously "precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served").

[17] *Spreitzer Props., LLC v. Travelers Corp.*, 2022 WL 1137091, at *6 & n.3 (N.D. Iowa Apr. 18, 2022) (collecting cases).

against-it camp is U.S. District Judge Woodlock's decision in *Gentile v. Biogen Idec, Inc.*, concluding that "the plain language of section 1441(b) requires at least one defendant to have been served before removal can be effected."[18] Judge Woodlock reached that conclusion by grammatically parsing the statute in its current and historical forms.[19] The statute now precludes removal "'if any of the parties in interest properly joined and served as defendants' is a forum defendant."[20] "'Any[]' . . . means 'one or more indiscriminately from all those of a kind[,]'"[21] and "[i]nherent in the definition is some number of the 'kind' from which the 'one or more' can be drawn."[22] "Thus the lack of a party properly joined and served . . . means that . . . [a] basic assumption embedded in the statute—that a party in interest had been served prior to removal—has not been met."[23] This interpretation bars snap removals.

      The removing defendants insist that *Gentile* should be rejected in favor of the circuit rulings that approve of this tactic.[24] They also argue that the First Circuit's 2015 decision in *Novak v. Bank of New York Mellon Trust*[25] demonstrates that this 2013 decision by Judge Woodlock, a judge within the First Circuit, was wrongly decided.[26] But *Novak* addressed only the general question of "whether a defendant may seek to remove a state-court action to federal court before being formally served"; it did not grapple with the more specific issue of a non-

---

[18] *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316, 318–19 (D. Mass. 2013) (quoting 28 U.S.C. § 1441(b) (2002)).
[19] *Id.* at 316 n.2, 318.
[20] *Id*. at 318.
[21] *Id.* (quoting *Webster's Third New Intern. Dictionary* 1536 (3d. ed. 1986)).
[22] *Id.*
[23] *Id.*
[24] ECF No. 19 at 7–13.
[25] *Novak v. Bank of New York Mellon Tr.*, 783 F.3d 910 (1st Cir. 2015).
[26] ECF No. 19 at 2.

forum defendant's snap removal in a diversity case with a forum codefendant.[27]  And after carefully considering the parties' authorities, I agree with the vast majority of the judges in this district that Judge Woodlock's interpretation "is the most cogent."[28]  Not only does it make grammatical sense, it is the interpretation most true to other canons of construction, the statute's purpose, and legislative intent.[29]

As Judge Woodlock reasoned, "[t]he removal power, and by extension the forum[-]defendant rule, is founded on the basic premise behind diversity jurisdiction itself"— "protect[ing] non-forum litigants from possible state[-]court bias in favor of forum-state litigants."[30]  But forum defendants do not suffer this bias and therefore do not need protection from it.  And the presence of a forum defendant presumably mitigates concerns of state-court bias toward the plaintiff.  So the forum-defendant "rule provides some measure of protection for a plaintiff's choice of forum" in certain circumstances.[31]  "[W]hen the overarching concerns

---

[27] *See Novak*, 783 F.3d at 911.

[28] *Deutsche Bank Nat'l Tr. Co. v. Chicago Title Nat'l Title Grp., Inc.*, 2020 WL 7360680, at *3 (D. Nev. Dec. 14, 2020); *accord Deutsche Bank Nat'l Tr. Co. v. Old Republic Title Ins. Grp., Inc.*, 532 F. Supp. 3d 1004, 1013 (D. Nev. 2021) (lauding *Gentile* as "[o]ne of the most clear and influential explanations of this view"); *Carrington Mortg. Servs., LLC v. Ticor Title Nevada, Inc.*, 2020 WL 3892786, at *3 (D. Nev. July 10, 2020); *see also* ECF No. 7 at 2 n.1 (collecting cases).

[29] *See Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1183 (9th Cir. 2019) ("If the language is ambiguous, we look to canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." (internal quotation marks omitted)).  To the extent that the Ninth Circuit's affirmance of this holding would create a circuit split, these are "compelling reason[s]" to do so. *See Kelton Arms Condo. Owners Ass'n*, 346 F.3d 1190, 1192 (9th Cir. 2003) (cited at ECF No. 19 at 4–6).

[30] *Gentile*, 934 F. Supp. 2d at 319 (Judge Woodlock dove into the removal statute's history and purpose "for completeness of [his] explanation"); *accord Lively*, 456 F.3d at 940.

[31] *Gentile*, 934 F. Supp. 2d at 319.

about local bias against the defendant" are absent, the rule allows "a plaintiff to move for a remand of the case to the state court . . . ."[32]

Courts agree that § 1441(b)'s legislative history does not explain why "properly joined and served" was added to the statute.[33] "Supreme Court jurisprudence at the time of the 1948 revision . . . suggests"[34] that this language was added to prevent the gamesmanship of a plaintiff "blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve."[35] But with the advent of electronic dockets, sophisticated, monied, or hyper-vigilant defendants are monitoring court filings and removing before any defendant has been served, with the goal of eluding the forum-defendant rule. Congress would not have intended to prevent plaintiffs' removal-defeating games by creating a means for defendants to leapfrog over the forum-defendant rule.

The removal statute's purpose is better fostered by precluding removal until at least one defendant has been served. That way, "plaintiffs legitimately seeking to join a forum defendant face the modest burden of serving that defendant before any others."[36] A plaintiff who "serves a non-forum defendant before serving a forum" one "has effectively chosen to waive an objection to removal by a nimble non-forum defendant who thereafter removes the case" before it can be served.[37] And the non-forum defendant can still argue that the forum defendant was fraudulently

---

[32] *Id.*
[33] *See, e.g., id.* at 319–20; *Encompass Ins. Co.*, 902 F.3d at 153.
[34] *Gentile*, 934 F. Supp. 2d at 319–20.
[35] *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003).
[36] *Gentile*, 934 F. Supp. 2d at 322.
[37] *Id.*

joined.[38]  This interpretation is faithful to the removal statute's entire purpose and consistent with its plain language, and I adopt it.  Applying this interpretation, I conclude that removal of this action was premature because it occurred before any defendant had been served.

### B. There is no federal-question hook for jurisdiction.

The removing defendants argue that they had a separate and additional basis to remove: "as a matter of judicially noticeable fact (which [the bank] is estopped from controverting), [the plaintiff bank] is ***not*** the real party in interest to this controversy"—Freddie Mac is because it is the true owner of the loan related to one of the several policies at issue, the Adamo Loan.[39]  And 12 U.S.C. § 1452(f) provides that "all civil actions to which" Freddie Mac "is a party" will "be deemed" to give rise to federal-question jurisdiction.[40]  For this factual proposition, the removing defendants cite the bank's 2016 motion for summary judgment in the underlying state-court litigation and the supporting affidavits, which detail Freddie Mac's ownership of the loan.[41]

But it cannot be currently said that Freddie Mac "is a party" to this suit, so 12 U.S.C. § 1452(f) isn't triggered by this action.  This case was brought by Bank of America, and Freddie Mac has not been named as a party in any pleading.  And "the Supreme Court has rejected the theory that the federal courts, when assessing their jurisdiction, should look beyond the pleadings to discover unnamed real parties in interest."[42]  This is particularly true in a coverage case like

---

[38] *Id.* at 322–23.

[39] ECF No. 19 at 17–20 (emphasis original).

[40] 12 U.S.C. § 1452(f).

[41] ECF No. 19 at 20–21.

[42] *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 654 (7th Cir. 2014) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 92–93 (2005)).

this one in which the plaintiff bank has pled that it "is the insured under the Adamo Policy" and "the beneficiary of" the Adamo deed of trust.[43]

Even if I were to look beyond the pleadings, I would conclude that the removing defendants have not demonstrated that the bank is not the real party in interest with respect to the Adamo policy claim. The removing defendants argue that Freddie Mac's ownership of the loan makes it the insured under the policy.[44] But this argument ignores the broader definition of "insured" under the relevant policy, which includes "the insured named in Schedule A" of that policy.[45] The Schedule A named insured is "Countrywide Home Loans, Inc., its successors and/or assigns,"[46] and Bank of America is such an assign, as evidenced by the Assignment of Deed of Trust recorded on December 24, 2012.[47] So the plaintiff bank is an insured under the Adamo policy regardless of any additional interest that Freddie Mac could potentially claim. Thus, in evaluating this remand motion, I decline to find that the plaintiff bank is not the real party in interest such that I should look beyond the pleadings for potential other plaintiffs.

### C. The fraudulent-misjoinder doctrine does not provide a basis for remand.

Finally, I consider the removing defendants' argument that the way that the bank packaged the claims into this single lawsuit was designed to evade removal. A common defense to a remand motion is the doctrine of fraudulent joinder, which prohibits a plaintiff from defeating federal subject-matter jurisdiction by joining a non-diverse party against whom no

---

[43] ECF No. 1-1 at ¶¶ 71–72; *see also Lincoln Prop. Co.*, 546 U.S. at 93 (collecting authorities for the proposition that "if named party's interest is real, the fact that other interested parties are not joined will not affect the jurisdiction of the federal courts" (internal quotation marks omitted)).
[44] ECF No. 19 at 20.
[45] ECF No. 1-1 at 567, § 1.
[46] *Id.* at 570 (Schedule A).
[47] ECF No. 8-1 at 2 (DOT assignment from Countrywide to Bank of America).

9

viable claim can be pled.[48]  As the Ninth Circuit has long recognized, a "fraudulent joinder" occurs when the "plaintiff fails to state a cause of action against [a] defendant, and the failure is obvious according to the settled rules of the state."[49]  And when that happens, the court can disregard the citizenship of the fraudulently joined non-diverse defendant to find complete diversity and deny remand.[50]

The removing defendants don't argue fraudulent joinder but rather "fraudulent *mis*joinder," which is the "egregious" cobbling together of claims and parties that cannot properly be joined under Federal Rule of Civil Procedure 20 for the purpose of avoiding federal jurisdiction.[51]  The instant lawsuit seeks redress for the denial of nineteen different insurance claims, and the removing defendants contend that, had the bank filed a separate lawsuit for each claim, "ten of those [suits] would not have a local defendant to defeat removal."[52]  At the very least, they argue, the court should sever and "retain jurisdiction over these fraudulently misjoined claims."[53]

But the fraudulent-misjoinder doctrine has not been recognized by the Ninth Circuit. Though a few district judges within the Ninth Circuit have adopted it, "[t]he doctrine has fared poorly within the Ninth Circuit as a whole, . . . as the vast majority of district[-]court cases

---

[48] *Grancare, LLC v. Thrower, by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018).

[49] *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

[50] *Grancare*, 889 F.3d at 548.

[51] *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353,  (11th Cir. 1996)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

[52] ECF No. 19 at 17.

[53] *Id*.

within the Ninth Circuit have refused to apply" it.[54] The Eleventh Circuit, which was the first federal circuit court to recognize the doctrine, remains the only one to have done so.[55] That holding has been broadly criticized—most recently by the Fifth Circuit in *Williams v. Homeland Insurance Company of New York*, which "refused the invitation" to adopt the fraudulent-misjoinder doctrine.

*Williams* was a class action by healthcare providers against diverse and nondiverse preferred-provider organizations and other diverse defendants. Defendant Homeland Insurance Company removed the case to federal court, arguing that the class had "improperly and egregiously misjoined" two types of claims—one against diverse defendants and the other involving non-diverse defendant Med-Comp.[56] The class was partially successful on its motion to remand: the district court essentially severed the case, remanded the claims against Med-Comp to state court, but disregarded Med-Comp's citizenship as to the rest of the case and retained jurisdiction over the remaining claims.[57]

On appeal, the Fifth Circuit panel reversed, expressly rejecting the fraudulent-misjoinder theory. "First and most importantly," it reasoned, the removal statute[58] "does not provide a textual basis for expanding federal jurisdiction to include fraudulent misjoinder, nor is there any other statutory authority (or case law interpreting statutory authority in this context) that does

---

[54] *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1210 (D. Nev. 2018) (quoting *Stone-Jusas v. Wal-Mart Stores, Inc.*, 2014 WL 5341686 at *3 (D. Nev. Oct. 20, 2014) (cleaned up and collecting cases).

[55] *See Williams v. Homeland Ins. Co. of New York*, 18 F. 4th 806, 814 (5th Cir. 2021) (citing *Tapscott*, 77 F.3d at 1360).

[56] *Williams*, 18 F. 4th at 810.

[57] *Id*. at 810–11.

[58] 28 U.S.C. § 1441(b)(2).

so."[59]  "The severance mechanism for omitting a non-diverse defendant also upends our rules on removal . . . by effectively allowing a federal district court to engage in significant procedural wrangling to *create* jurisdiction."[60]  This would run afoul of the "well-known rule that federal courts are courts of *limited* jurisdiction" and "invite district courts to evaluate procedural questions regarding misjoinder that are better resolved in state courts prior to removal"—"all without a clear statutory hook."[61]  The panel concluded that "[d]eclining to adopt the fraudulent misjoinder doctrine as a basis for exercising diversity jurisdiction and holding that misjoinder issues should be addressed in state court prior to removal also brings greater clarity to the line between removable and non-removable cases."[62]

      I find the *Williams* reasoning persuasive, adopt it here, and decline the invitation to create subject-matter jurisdiction by severing claims.  If claims are truly misjoined, a removing defendant could—and should—move to sever the claims in state court and then remove.[63]  Such a practice is more faithful to 28 U.S.C. § 1441(b)(2) and the Ninth Circuit's long recognition that it must be "strictly construe[d] . . . against removal jurisdiction" with "any doubt as to the right of removal" resolved against federal jurisdiction.[64]

---

[59] *Williams*, 18 F. 4th at 815.
[60] *Id*. at 816.
[61] *Id*. at 815–16.
[62] *Id*. at 817.
[63] *Id*. at 817.
[64] *Gaus*, 980 F.2d at 566.

## Conclusion

IT IS THEREFORE ORDERED that the bank's motion for remand **[ECF No. 7] is GRANTED**.

IT IS FURTHER ORDERED that the Clerk of Court is directed to **REMAND this action back to the Eighth Judicial District Court for Clark County, Nevada, Department 14, Case No. A-21-832049-C**, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
July 25, 2022